**UNITED STATES of America**

v.

**James HOULIHAN.**

**Cr. No. 95–10378–NG.**

United States District Court,
D. Massachusetts.

May 2, 1996.

Peter B. Krupp, Federal Defender Office, Boston, MA, for James Houlihan.

Frank A. Libby, Jr., Paul V. Kelly, United States Attorney's Office, Boston, MA, for U.S.

### MEMORANDUM RE: CHANGE OF VENUE

GERTNER, District Judge.

Defendant James Houlihan has moved under Fed.R.Crim.P. 18 and 21(a) to change the venue of the trial of this case from Boston to Springfield due to what he alleges is the extraordinary and inflammatory publicity surrounding this case and the related trial of *United States v. John Houlihan, et al.*

I deny the motion at this time. As described below, I find that the issues raised by the pretrial publicity may be addressed by a searching, and complete voir dire of the venire beginning on June 3, 1996. If that voir dire suggests that the level of prejudice against the defendant is unacceptably high, I will suspend jury selection in Boston and will move the venue of the trial to Worcester beginning June 10, 1996, selecting a jury from the Springfield venire.

### I. FACTS

Defendant is charged with killing Patrick Nee in retaliation for his family's testimony and cooperation with law enforcement during the trial of *United States v. Houlihan, et al.*, dubbed the "code of silence" trial. The publicity surrounding the instant case as well as the "code of silence" case has been substantial. Counsel for the defendant has provided the court with a sample of 50 articles from *The Boston Globe,* and fifty articles from the *Boston Herald.* Eleven of these specifically contain the media's speculation about the death of Patrick Nee, and its relationship to the "code of silence" case. One article, for example, described the search of defendant's home and was replete with quotes from the Boston police, and police speculation that "Houlihan was involved in Nee's murder because of their family ties to the 'code of silence' case." The coverage of the print media tracks the coverage of the electronic media—again linking the defendant to the "code of silence" case, and, surely by implication, to the murders and drug dealing in the "code of silence" case. The defendant is the nephew of the lead defendant in the "code of silence" case; he shares the same last name. And, while some of the publicity was factual as the Government suggests, some was quite

emotional—the feelings of the victim on the loss of her son, the fear engendered by the defendant's family, etc.

Notwithstanding the extensive coverage about the "code of silence" case, juries were selected from Eastern Massachusetts in *United States v. John Houlihan,* No. 93 10291–WGY and a case severed from it, *United States v. Doherty,* 93–10291–WGY. I have been provided with a transcript of the jury selection in the *John Houlihan* case which suggests that although numbers of jurors were familiar with the case, a jury could be selected from among those who were not. That fact is not dispositive here since this case could well amount to the third retelling of some of the same facts. It is not inconceivable that whatever the impact of the publicity during the first two rounds, will be exacerbated in the third.

Counsel also provided me with circulation figures for the Boston print and electronic media, specifically in Worcester and Springfield, the sites of federal courthouses, in order to determine the geographical scope of the publicity. Those materials suggest that while Worcester receives coverage comparable to Boston, Springfield receives considerably less coverage by the Boston media.

The question before the Court then is: What type of voir dire is necessary to ferret out bias or, failing that, whether a change of venue is constitutionally required. Finally, if a change of venue is mandated, to what jurisdiction should venue be transferred?

### II. ANALYSIS

The Sixth Amendment guarantees the accused a public trial by an impartial jury; the Fifth Amendment guarantees the accused the "due process of law." The issue is whether the local publicity in this case has reached a level that compromises these important rights.

The Supreme Court has articulated a two step test to determine whether change of venue is constitutionally required. In certain, increasingly rare, situations publicity may have reached such a degree that unacceptable levels of prejudice amongst poten-

tial jurors can be presumed. *See Rideau v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963). In evaluating such situations, the court is obliged to review not only the amount and pervasiveness of the publicity (a quantitative measure) but also the nature of the information disclosed (a qualitative measure). I have reviewed the materials presented in detail.

■ In the light of Supreme Court case law, notably *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975) and *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), I cannot find that the publicity in this case has reached "presumptively prejudicial" levels. In *Murphy and Patton,* publicity far more virulent than that found in the instant case was found not to meet the test.[1]

■ In the absence of overwhelming publicity, the Court has conditioned change of venue on a showing of "actual prejudice." *Sheppard v. Maxwell,* 384 U.S. 333, 363, 86 S.Ct. 1507, 1522–23, 16 L.Ed.2d 600 (1966). This test requires a showing of a "reasonable likelihood" that prejudicial publicity will prevent a fair trial. *Id.* at 363, 86 S.Ct. at 1522–

23. Typically this involves direct evidence of bias, such as voir dire responses or survey data. *See Irvin v. Dowd,* 366 U.S. 717, 728, 81 S.Ct. 1639, 1645–46, 6 L.Ed.2d 751 (1961).[2] The case law interpreting *Sheppard* and *Irvin* suggests that the more appropriate route is for this Court to give the parties a careful voir dire process, designed to determine if a fair and impartial jury can be selected. If it cannot, if the level of exposure to and taint from pre trial publicity is unacceptably high, the Court will order venue to Worcester the following week, with the selection of jurors from Springfield.[3]

Voir dire in this case will include a questionnaire, followed by individual questioning conducted by counsel. Studies by social scientists suggest that pretrial publicity affects potential jurors in ways of which they may not be aware, which they may not be able to articulate. Publicity, even if it is not strictly speaking, inflammatory, which suggests culpability, or which links the defendant to the criminal activities of others, as here, directly affects the readers' perception of guilt, how likely they are to give weight to negative facts about the defendant at trial, to resolve

---

**1.** I should note that Judge Matsch, recently found such a level in the Oklahoma City Bombing case (*United States v. Nichols,* 918 F.Supp. 1467 (W.D.Okla.1996)) on a record dimensions more substantial than the instant case. Apart from *Nichols,* which is truly an extraordinary case, presumptively prejudicial publicity necessitating a change in venue has been found in state cases where the venire is drawn from small geographical areas more readily saturated with prejudicial publicity. It is more rarely required in federal court where the district draws from a larger area, here, Eastern Massachusetts.

**2.** Presumptive prejudice in contrast is a conclusion drawn typically from circumstantial evidence.

**3.** In addition to the constitutional issues, cases construing the supervisory authority of the federal courts suggest that the threshold for unacceptable prejudicial publicity triggering a change in venue may well be lower, than under the constitutional standard. Most of those cases, such as *Marshall v. United States,* 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959), have addressed the issue on appeal after voir dire has suggested substantial prejudice, or where the publicity has been considerably more substantial than in the instant case, *see United States v. Moody,* 762 F.Supp. 1485 (N.D.Ga.1991).

A very important factor in many of these cases is the fact that the publicity has been engendered by reports given by government agents. It has been suggested that where government agents have been responsible for the dispensing of information, thereby giving such information their imprimatur, a court is more likely to consider a change of venue. Dissenting in *Rideau v. Louisiana,* Justice Clark noted the significance of this issue:

> ... I do not believe it within the province of law enforcement officers actively to cooperate in activities which tend to make more difficult the achievement of impartial justice. Therefore, if this case arose in a federal court, over which we exercise supervisory powers, I would vote to reverse the judgment. It goes without saying, however, that there is a very significant difference between matters within the scope of our supervisory powers and matters which reach constitutional dimension.

373 U.S. at 728, 729, 83 S.Ct. at 1420 (Clark, J. dissenting).

On this record, I do not have enough information concerning the extent to which government agents have been responsible for the press speculation, or the extent to which information has been in appropriately leaked by the government, if at all.

conflicts in credibility against the defendants. Publicity unrelated to the crime can even have an impact; to be sure, the more similar the publicized cases to the case on trial, as here, the greater the effect.[4]

The problem of insuring fairness in a highly publicized trial such as this one is, in short, a very difficult one, requiring questions more probing than "do you think the publicity in this case will interfere with your right to be a fair and impartial juror?" No advocate would ever countenance such conclusory questions of a witness ("isn't it a fact that you are biased against my client?); they should not suffice here. The Court is not familiar enough with the facts of the case in order to question jurors with the degree of specificity required.

I **DENY** the defendant's motion for a change of venue under the following circumstances:

1. Trial will begin on June 3, 1996 with a jury questionnaire submitted by both sides and approved by the court, followed by individual, lawyer voir dire;

2. Should the voir dire process indicate that there is an unacceptable level of prejudice amongst the potential jurors occasioned by the pretrial publicity, trial in Boston will be suspended and will resume in Worcester, on June 10, 1996, with jurors selected from a Springfield venire.

**SO ORDERED.**

---

**4.** *See* Norbert Kerr, Geoffrey Kramer, John S. Carrol and James J. Alfini, *On the Effectiveness of Voir Dire in Criminal Cases with Prejudicial Pre-* *trial Publicity: An Empirical Study*, 40 Am. U.L.Rev. 665 (1991); Kerr, *The effects of pretrial publicity on jurors*, 78 Judicature 120 (1994).